MAGNUM ENERGY v. BD. OF ADJUSTMENT FOR THE CITY OF NORMAN

Skip to Main Content
Accessibility Statement

Help
Contact Us

e-payments
Careers

Home
Courts
Decisions
Programs
News
Legal Research
Court Records
Quick Links

OSCN Found Document:MAGNUM ENERGY v. BD. OF ADJUSTMENT FOR THE CITY OF NORMAN

Previous Case

Top Of Index

This Point in Index

Citationize

Next Case

Print Only

MAGNUM ENERGY v. BD. OF ADJUSTMENT FOR THE CITY OF NORMAN2022 OK 26Case Number: 117912Decided: 03/22/2022THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2022 OK 26, __ P.3d __

NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL.

 

 

MAGNUM ENERGY, INC., Plaintiff/Appellee,
v.
BOARD OF ADJUSTMENT FOR THE CITY OF NORMAN, OKLAHOMA, Defendant/Appellant.

ON CERTIORARI TO THE COURT OF CIVIL APPEALS, DIVISION I

Honorable Jeff Virgin, Trial Judge

¶0 Plaintiff, Magnum Energy, Inc., appealed a decision from Defendant, Board of Adjustment for the City of Norman, Oklahoma, denying Plaintiff's application for a variance from the City's business licensing requirement that oil and gas operators maintain two million dollars in umbrella liability coverage. The trial court granted summary judgment in Plaintiff's favor, finding that the requirement conflicts with State law and is therefore unenforceable. Defendant appealed the trial court's order, and the matter was assigned to the Court of Civil Appeals, Division I. The Court of Civil Appeals reversed the trial court's order, finding no conflict between the requirement and State law. We granted certiorari to address whether the requirement conflicts with 52 O.S.Supp.2015 § 137.1, which establishes the authority of localities to regulate oil and gas operations. We hold that the requirement conflicts with 52 O.S.Supp.2015 § 137.1, rendering the requirement invalid and unenforceable.

CERTIORARI PREVIOUSLY GRANTED;
COURT OF CIVIL APPEALS' OPINION VACATED;
JUDGMENT OF THE TRIAL COURT AFFIRMED.

Gregory L. Mahaffey and Zachary J. Foster, Mahaffey & Gore, P.C., Oklahoma City, Oklahoma, for Plaintiff/Appellee.

Rickey J. Knighton II and Elisabethe E. Muckala, Norman, Oklahoma, for Defendant/Appellant.

ROWE, J.:

I. BACKGROUND

¶1 Section 13-1502.1(a)(4) of the Norman Municipal Code requires oil and gas operators to maintain an umbrella insurance policy with at least two million dollars in coverage. Plaintiff, Magnum Energy Inc. ("Magnum"), has operated the Patty No. 1 Well in Norman, Oklahoma, since September 1989. On January 2, 2018, Magnum filed an application for a variance with Defendant, Board of Adjustment for the City of Norman ("Board"), requesting a waiver of the umbrella insurance requirement contained in § 13-1502.1(a)(4). On January 24, 2018, Board denied Magnum's application for a variance.

¶2 Magnum appealed Board's order to the District Court of Cleveland County on February 2, 2018. In its appeal, Magnum claimed, among other things, that § 13-1502.1(a)(4) conflicted with 52 O.S.Supp.2015 § 137.1, which places limits on the authority of localities to regulate oil and gas operations. On January 10, 2019, Magnum filed a Motion for Summary Judgment seeking to have § 13-1502.1(a)(4) declared void and unenforceable on grounds that it conflicted with state law. On March 19, 2019, the District Court granted Magnum's Motion for Summary Judgment, finding that § 13-1502.1(a)(4) conflicts with 52 O.S.Supp.2015 § 137.1 and enjoining its enforcement against Magnum.

¶3 Board filed its Petition in Error on April 18, 2019. The matter was assigned to the Court of Civil Appeals, Division I ("COCA"). On June 24, 2020, COCA issued an unpublished opinion reversing the District Court's order granting Magnum's Motion for Summary Judgment. COCA determined that § 13-1502.1(a)(4) of the Norman Municipal Code was enacted pursuant to the City's general police power, the ordinance is not precluded by 52 O.S.Supp.2015 § 137.1 and is enforceable.

¶4 On June 24, 2020, Magnum filed its Petition for Certiorari, alleging that COCA decided a question of substance not yet determined by this Court and did so in a manner not in accord with prior applicable decisions of this Court. On December 14, 2020, we granted certiorari. Magnum contends on appeal that the enactment of § 137.1 in 2015 curtailed the authority of localities to regulate oil and gas operations under the scope of their general police power and that § 13-1502.1(a)(4) is precluded by § 137.1.

II. STANDARD OF REVIEW

¶5 We review a trial court's order granting summary judgment de novo. Tiger v. Verdigris Valley Elec. Coop., 2016 OK 74, ¶ 13, 410 P.3d 1007, 1011. Likewise, legal questions involving statutory interpretation are subject to de novo review. Cole v. Josey, 2019 OK 39, ¶ 3, 457 P.3d 1007, 1009. De novo review involves a plenary, independent, and non-deferential examination of the issues presented. Benedetti v. Cimarex Energy Co., 2018 OK 21, ¶ 5, 415 P.3d 43, 45.

III. DISCUSSION

¶6 Magnum's position on certiorari is that the umbrella insurance requirement in § 13-1502.1(a)(4) of the Norman Municipal Code conflicts with 52 O.S.Supp.2015 § 137.1. "The general rule is that a municipal ordinance or portion thereof which is in conflict with state statutes is void." Constant v. Brown, 1941 OK 205, ¶ 8, 114 P.2d 477, 478. "A conflict exists between a state enactment and a municipal charter or ordinance when both contain either express or implied provisions that are inconsistent or irreconcilable with one another." State ex rel. Trimble v. City of Moore, 1991 OK 97, ¶ 29, 818 P.2d 889, 898. A municipal ordinance may, however, supersede a state statute if the ordinance affects a subject that is purely of municipal concern. Vinson v. Medley, 1987 OK 41, ¶ 5, 737 P.2d 932, 936. It does not appear to be Board's position that the subject matter of § 13-1502.1(a)(4) is purely of municipal concern.

¶7 Whether the umbrella insurance requirement of § 13-1502.1(a)(4) exceeds the scope of the authority reserved for municipalities to regulate oil and gas production under § 137.1 presents two questions: (1) what is the scope of municipal authority to regulate the production of oil and gas, and (2) whether § 13-1502.1(a)(4) falls within the scope of that authority.

¶8 Both of these questions necessarily involve statutory interpretation. When interpreting a statute, we keep the following principles in mind:

The goal of any inquiry into the meaning of a statutory enactment is to ascertain and give effect to the intent of the legislature. The law-making body is presumed to have expressed its intent in a statute's language and to have intended what the text expresses. If a statute is plain and unambiguous, it will not be subjected to judicial construction, but will receive the effect its language dictates. Only where the intent cannot be ascertained from a statute's text, as when ambiguity or conflict (with other statutes) is shown to exist, may rules of statutory construction be employed.

Yocum v. Greenbriar Nursing Home, 2005 OK 27, ¶ 9, 130 P.3d 213, 219 (internal citations omitted).

¶9 As to the first issue, Magnum contends that a municipality's authority to regulate oil and gas production is confined to the parameters set out in § 137.1.1 Section 137.1 grants municipalities authority to regulate oil and gas production in three areas, to wit:

A municipality, county or other political subdivision may enact reasonable ordinances, rules and regulations concerning road use, traffic, noise and odors incidental to oil and gas operations within its boundaries, provided such ordinances, rules and regulations are not inconsistent with any regulation established by Title 52 of the Oklahoma Statutes or the Corporation Commission.

52 O.S.Supp.2015 § 137.1. Second, a municipality has the ability to:

[E]stablish reasonable setbacks and fencing requirements for oil and gas well site locations as are reasonably necessary to protect the health, safety and welfare of its citizens but may not effectively prohibit or ban any oil and gas operations, including oil and gas exploration, drilling, fracture stimulation, completion, production, maintenance, plugging and abandonment, produced water disposal, secondary recovery operations, flow and gathering lines or pipeline infrastructure.

Id. Finally, a municipality may:

[E]nact reasonable ordinances, rules and regulations concerning development of areas within its boundaries which have been or may be delineated as a one-hundred-year floodplain but only to the minimum extent necessary to maintain National Flood Insurance Program eligibility.

Id. Except for these three areas, § 137.1 states, "All other regulations of oil and gas operations shall be subject to the exclusive jurisdiction of the Corporation Commission."

¶10 In addition to the express language of § 137.1, Magnum points to the changes between § 137.1 and its predecessor, § 137, as further evidence of the Legislature's intent to limit the scope of municipal authority to regulate oil and gas. Prior to the adoption of § 137.1 in 2015, municipal authority to regulate oil and gas was governed, at least in part, by 52 O.S.2011 § 137, which stated:

Nothing in this act is intended to limit or restrict the rights of cities and towns governmental corporate powers to prevent oil or gas drilling therein nor under its police powers to provide its own rules and regulations with reference to well-spacing units or drilling or production which they may have at this time under the general laws of the State of Oklahoma.

Magnum acknowledges that under the former statutory scheme, municipal authority to regulate oil and gas was much more expansive and likely would have encompassed regulations like the umbrella insurance requirement in § 13-1502.1(a)(4). At the same time, Magnum contends that the stark changes between § 137 and § 137.1 evince a clear intent on behalf of the Legislature to shift primary exclusive jurisdiction over the regulation of oil and gas from local governments to the Corporation Commission.

¶11 Magnum also claims that we have previously decided this issue via an unpublished order in another matter, Oklahoma Oil & Gas Ass'n v. Kingfisher Cty. Comm'rs, No. 117,303 (OKLA. SUP. CT. Dec. 17, 2018), reh'g denied, (OKLA. SUP. CT. Jan. 22, 2019). In that case, the Oklahoma Oil & Gas Association sought to enjoin the Kingfisher County Commissioners from imposing a ban on the transportation of wastewater through temporary lines crossing county road easements. The Oklahoma Oil & Gas Association alleged that the ban exceeded the scope of authority afforded to the county commissioners under § 137.1. We found that the Commissioners' ban on temporary wastewater lines was not authorized by § 137.1 because it did not fall within any of the three areas preserved for municipal regulation.2

¶12 Board argues that § 137.1 does not comprise the full scope of municipal authority to regulate oil and gas production. Specifically, Board contends that municipalities maintain a general police power to provide for the safety and wellbeing of their inhabitants, and pursuant to that authority, municipalities may impose regulations on oil and gas production that go beyond the categories enumerated in § 137.1. In support of its position, Board cites to a number of our prior decisions recognizing this municipal police power, most notably Gant v. Oklahoma City, 1931 OK 241, 6 P.2d 1065. In Gant, we addressed a challenge to a similar insurance requirement imposed by an Oklahoma City municipal ordinance. Id. ¶ 12, 6 P.2d at 1068-69. We upheld the ordinance as a legitimate exercise of the city's police power:

An examination of the cases cited under proposition 1 does not disclose that there is anything in them that would warrant us in holding that the general police power of Oklahoma City to provide for the safety and health of its inhabitants is in any way taken away by virtue of the jurisdiction conferred upon the Corporation Commission to superintend the drilling for oil and gas, and their carrying and preservation.

Gant, 1931 OK 241, ¶ 11, 6 P.2d at 1068.

¶13 Board also rejects Magnum's arguments that the Legislature intended to curtail municipal authority by replacing § 137 with § 137.1. Specifically, Board argues that if the Legislature intended to divest municipalities of their police power and give exclusive jurisdiction to the Corporation Commission, it would have done so by amending 17 O.S. § 52, which establishes the regulatory authority of the Corporation Commission. Board maintains that merely replacing § 137 with § 137.1 shows that the Legislature did not intend to significantly alter the concurrent jurisdiction of municipalities and the Corporation Commission.

¶14 As for our order in the Kingfisher County matter, Board notes that unpublished orders of this kind do not have precedential value. Sup. Ct. R. 1.200; Bilbrey v. Cingular Wireless, L.L.C., 2007 OK 54, ¶ 23 n.7, 164 P.3d 131, 136 n.7. Board further argues that even if the order did have precedential value, it would not resolve the present matter since it was limited to the question of whether the temporary pipeline ban constituted a regulation concerning road use.

¶15 While the precise issue raised in this appeal has not come before this Court, it has been raised in other settings. Shortly after the enactment of § 137.1, several members of the Legislature requested an Attorney General Opinion on a number of questions related to the effect of § 137.1 on municipal authority to regulate oil and gas.3 Among other things, the legislators explicitly asked whether municipalities could "regulate aspects of oil and gas operations that are not specifically enumerated in Section 137.1." Question Submitted by: Hon. Mike Ritze, State Rep., Dist. 80; Hon. Chris Kannady, State Rep., Dist. 91; Hon. Kevin Calvey, State Rep., Dist. 82, 2015 OK AG 12, ¶ 0. The Attorney General concluded that it was "clear from the entirety of Senate Bill 809 [the legislation repealing § 137 and creating § 137.1] that the Legislature intended to limit local regulation to the areas specifically enumerated therein." Id. ¶ 12.

¶16 On review, we find no basis in statute or our prior decisions for the general municipal police power asserted by Board. Board's position rests on our prior decision in Gant. While it is true that in Gant we recognized a general municipal police power to regulate oil and gas production, Board's position fails to account for the effect of statutory changes since Gant was decided.

¶17 Gant was decided in 1931. Until 2015, Oklahoma statutory and jurisprudential law, including Gant and its progeny, clearly embraced broad municipal authority to regulate oil and gas production. Section 137 afforded municipalities the authority to prohibit oil and gas production altogether and explicitly recognized a municipality's police power to impose other regulations. With the repeal of § 137 and adoption of § 137.1, the Legislature drastically curtailed the jurisdiction of municipalities to regulate oil and gas production. Notably, in § 137.1, the Legislature omitted any reference to municipal police power, instead reserving specific and limited areas of regulation for municipal control. The Legislature also explicitly precluded municipalities from prohibiting oil and gas production and made all other regulations of oil and gas production subject to the exclusive jurisdiction of the Corporation Commission.

¶18 "The goal of any inquiry into the meaning of a statutory enactment is to ascertain and give effect to the intent of the legislature." See Yocum, 2005 OK 27, ¶ 9, 130 P.3d at 219. In instances like this, which involve statutory changes or amendments, we have established principles for ascertaining the intent of the Legislature:

Where a statute is amended the Legislature may have intended either, (1) to effect a change in existing law, or (2) to clarify that which was previously doubtful. Which purpose was intended by a particular amendment is to be determined to some extent from the circumstances surrounding its enactment. Where the former statute was clear, or where its meaning had been judicially determined, the amendment may reasonably indicate that the intention of the Legislature was to alter the law. On the other hand where the meaning of the former statute was subject to serious doubt, or where controversies concerning its meaning had arisen, it may be presumed that the amendment was made to more clearly express the legislative intention previously indefinitely expressed.

Magnolia Pipe Line Co. v. Oklahoma Tax Commission, 1946 OK 113, ¶ 11, 167 P.2d 884, 888 (internal citations omitted); see also Polymer Fabricating, Inc. v. Employers Workers' Compensation Ass'n, 1998 OK 113, ¶ 15 n.18, 980 P.2d 109, 114 n.18.

¶19 In this instance, the Legislature's decision to repeal § 137 and replace it with § 137.1 clearly falls into the former category. Prior to 2015, a review of § 137 and our extant jurisprudence would have made clear that municipalities maintained broad authority to regulate oil and gas production pursuant to their police power. Furthermore, there were no plain or obvious ambiguities in the text of § 137 to necessitate an amendment. More importantly, to the extent there were ambiguities in the text of § 137, we find that § 137.1 was not intended to resolve them. Rather, § 137.1 fundamentally altered the nature of the concurrent jurisdiction shared by municipalities and the Corporation Commission. This restructuring included removing a municipality's police power to regulate oil and gas. Thus, based on the foregoing, we find that municipal authority to regulate oil and gas is limited in scope to those areas reserved in § 137.1 and elsewhere in statute.

¶20 The umbrella insurance requirement in § 13-1502.1(a)(4) does not fall within any of the categories reserved for municipal regulation under § 137.1. Section 13-1502.1(a)(4) does not qualify as an ordinance concerning road use, traffic, noise and odors incidental to oil and gas operation. Section 13-1502.1(a)(4) also does not constitute a setback or fencing requirement for oil and gas well sites, nor does it concern the development of areas delineated as a one-hundred-year floodplain. The only other source of municipal authority referenced by either party is 17 O.S. § 52(B), which states, "The Corporation Commission and incorporated cities and towns shall have exclusive jurisdiction over permit fees for the drilling and operation of oil and gas wells." While satisfying the umbrella insurance requirement in § 13-1502.1(a)(4) is necessary to obtain a permit in Norman, it cannot be fairly characterized as a permit fee. Based on the foregoing, we find that § 13-1502.1(a)(4) of the Norman Municipal Code is irreconcilable with state law.

IV. CONCLUSION

¶21 With the enactment of 52 O.S.Supp.2015 § 137.1 in 2015, the Legislature sought to change the nature of the concurrent jurisdiction of municipalities and the Corporation Commission. Municipalities no longer possess a broad police power to regulate oil and gas. Section 13-1502.1(a)(4) exceeds the scope of authority to regulate oil and gas production reserved for municipalities in § 137.1 and elsewhere in statute. We find that § 13-1502.1(a)(4) conflicts with 52 O.S. § 137.1, rendering § 13-1502.1(a)(4) invalid and unenforceable. Accordingly, COCA's opinion is hereby vacated, and the judgment of the trial court is affirmed.

CERTIORARI PREVIOUSLY GRANTED;
COURT OF CIVIL APPEALS' OPINION VACATED;
JUDGMENT OF THE TRIAL COURT AFFIRMED.

ALL JUSTICES CONCUR.

FOOTNOTES

1 Title 52, § 137.1 reads as follows:

A municipality, county or other political subdivision may enact reasonable ordinances, rules and regulations concerning road use, traffic, noise and odors incidental to oil and gas operations within its boundaries, provided such ordinances, rules and regulations are not inconsistent with any regulation established by Title 52 of the Oklahoma Statutes or the Corporation Commission. A municipality, county or other political subdivision may also establish reasonable setbacks and fencing requirements for oil and gas well site locations as are reasonably necessary to protect the health, safety and welfare of its citizens but may not effectively prohibit or ban any oil and gas operations, including oil and gas exploration, drilling, fracture stimulation, completion, production, maintenance, plugging and abandonment, produced water disposal, secondary recovery operations, flow and gathering lines or pipeline infrastructure. All other regulations of oil and gas operations shall be subject to the exclusive jurisdiction of the Corporation Commission. Provided, notwithstanding any provision of law to the contrary, a municipality, county or other political subdivision may enact reasonable ordinances, rules and regulations concerning development of areas within its boundaries which have been or may be delineated as a one-hundred-year floodplain but only to the minimum extent necessary to maintain National Flood Insurance Program eligibility.

2 In doing so, we provided the following analysis:

Title 52, section 137.1 does not authorize the county to enact Resolution No. 23. The resolution cannot be characterized as a regulation concerning "road use," as the appearance of that term in the first sentence of section 137.1 contemplates a vehicle's use of roads incidental to oil and gas operations. Even if the resolution could be characterized as a regulation concerning "road use," it would be void as being inconsistent with 52 O.S.Supp.2017 § 139(A), (B)(1)(i) and with the Corporation Commission's regulation found in section 165:10-7-24 of the Oklahoma Administrative Code. See 52 O.S.Supp.2017 § 137.1 ("A ... county ... may enact reasonable ordinances, rules and regulations concerning road use ... incidental to oil and gas operations within its boundaries, provided such ordinances, rules and regulations are not inconsistent with any regulation established by Title 52 of the Oklahoma Statutes or the Corporation Commission." (emphasis added)). Further, Respondents have not and cannot justify the resolution as a "setback" or "fencing requirement" for an oil and gas well site location, nor as a regulation "concerning development of areas ... which have been or may be delineated as a one-hundred-year floodplain." See id. Consequently, Respondents lack authority to issue a regulation like Resolution No. 23 because section 137.1 mandates that exclusive jurisdiction to enact such a regulation lies in the Corporation Commission. See § 137.1; accord 52 O.S.Supp.2017 § 139(A), (B)(1)(i); 17 O.S.Supp.2017 § 52(A)(1)(i); 27A O.S.Supp.2017 § 1-3-101(E)(1)(i).

Oklahoma Oil & Gas Ass'n v. Kingfisher Cty. Comm'rs, No. 117,303 at 2-3 (OKLA. SUP. CT. Dec. 17, 2018), reh'g denied, (OKLA. SUP. CT. Jan. 22, 2019) (emphasis in original).

It does not appear that the question of whether the ban might have been authorized pursuant to a general municipal police power was raised by the county commissioners or addressed in this Court's order granting the Oil & Gas Association's requested injunctive relief.

3 Attorney General opinions are not binding on this Court, but they may be persuasive authority. Edwards v. Bd. of Cty. Comm'rs of Canadian Cty., 2015 OK 58, ¶ 15, 378 P.3d 54, 60.

Citationizer© Summary of Documents Citing This Document

Cite
Name
Level

None Found.

Citationizer: Table of Authority

Cite
Name
Level

Oklahoma Attorney General's Opinions
 CiteNameLevel

 2015 OK AG 12, Question Submitted by: The Honorable Mike Ritze, State Representative, District 80; The Honorable Chris Kannady, State Representative, District 91; The Honorable Kevin Calvey, State Representative, District 82Cited
Oklahoma Supreme Court Cases
 CiteNameLevel

 1987 OK 41, 737 P.2d 932, 58 OBJ 1417, Vinson v. MedleyDiscussed
 1941 OK 205, 114 P.2d 477, 189 Okla. 147, CONSTANT v. BROWNDiscussed
 1991 OK 97, 818 P.2d 889, 62 OBJ 2887, State ex rel. Trimble v. City of MooreDiscussed
 1946 OK 113, 167 P.2d 884, 196 Okla. 633, MAGNOLIA PIPE LINE CO. v. OKLAHOMA TAX COMM'NDiscussed
 1931 OK 241, 6 P.2d 1065, 150 Okla. 86, GANT et al. v. OKLAHOMA CITYDiscussed at Length
 2005 OK 27, 130 P.3d 213, YOCUM v. GREENBRIAR NURSING HOMEDiscussed at Length
 2007 OK 54, 164 P.3d 131, BILBREY v. CINGULAR WIRELESS, L.L.C.Discussed
 2015 OK 58, 378 P.3d 54, EDWARDS v. BOARD OF COUNTY COMMISSIONERSDiscussed
 2016 OK 74, 410 P.3d 1007, TIGER v. VERDIGRIS VALLEY ELECTRIC COOPERATIVEDiscussed
 2018 OK 21, 415 P.3d 43, BENEDETTI v. CIMAREX ENERGY COMPANYDiscussed
 2019 OK 39, 457 P.3d 1007, COLE v. JOSEYDiscussed
 1998 OK 113, 980 P.2d 109, 69 OBJ 4068, Polymer Fabricating, Inc. v. Employers Workers' Compensation AssociationDiscussed
Title 17. Corporation Commission
 CiteNameLevel

 17 O.S. 52, Corporation Commission - Jurisdiction - Emergency ResponseDiscussed at Length
Title 52. Oil and Gas
 CiteNameLevel

 52 O.S. 137.1, Authority of Localities to Regulate Oil and Gas Operations - Fracking - PreemptionDiscussed at Length
 52 O.S. 137, RepealedCited
 52 O.S. 139, Exclusive Jurisdiction, Power and Authority Vested in Corporation Commission and the Department of Environmental QualityDiscussed

oscn

EMAIL: webmaster@oscn.net
Oklahoma Judicial Center
2100 N Lincoln Blvd.
Oklahoma City, OK 73105

courts

Supreme Court of Oklahoma
Court of Criminal Appeals
Court of Civil Appeals
District Courts

decisions

New Decisions
Supreme Court of Oklahoma
Court of Criminal Appeals
Court of Civil Appeals

programs

The Sovereignty Symposium

Alternative Dispute Resolution
Early Settlement Mediation
Children's Court Improvement Program (CIP)
Judicial Nominating Commission
Certified Courtroom Interpreters
Certified Shorthand Reporters
Accessibility ADA

Contact Us
Careers
Accessibility ADA